Good morning, Your Honors, and may it please the Court, Ashley Keller for the Appellants. Jurisdiction is the power to declare the law and bind the parties to a judgment. Where it ceases to exist or never existed at all, a federal court only has the power to announce that fact and dismiss the cause. So it's especially important to determine quickly and efficiently whether subject matter jurisdiction exists. A test for subject matter jurisdiction that turns on analyzing how long a deposition went, when discovery was served, or how to interpret a meet and confer phone call is a disaster for federal courts and litigants alike. You should reverse the district court for four independent, sufficient reasons. I'll start with my favorite one, which is first principles. Federal courts derive their power from congressional statutes. That's been true from the dawn of the republic, and my friend and I crucially agree. So would you write out fraudulent joinder altogether? I would if I was starting from scratch without question. I know this court doesn't like to go and bonk very frequently, but you could circulate an opinion to your colleagues and overturn Palos. That would be completely consistent with the congressional statutes. We haven't asked you to do that, and the reason we haven't is we don't need to in order to prevail. You can adhere to the very decisive principles, maintain Palos, but obviously not expand the doctrine any further if it's inconsistent with first principles and poses administrability concerns. And again, my friend and I do not disagree. There isn't one word of statutory text that supports expanding the fraudulent joinder doctrine to an intent-based inquiry. Now, if text alone is not your only poll star, you'd like to look at other tools of statutory construction, we still win. Look at the context of the federal statutes. Congress has told you when to disregard a party for diversity purposes in 1441B. It's not this context. Congress has told you when you can consider bad faith in 1446C. It's not this context. Congress has told you where there's collusion in order to create jurisdiction in federal court. That's not allowed under 1359. It's not this context. If you want to take a peek at legislative history because you think that's an appropriate mode of statutory interpretation, we win in a walk. Congress has considered this very rule, the Fraudulent Joinder Prevention Act in 2016, quite modern. It came out favorably from the Judiciary Committee and the House of Representatives. It contained language that is almost a verbatim replica of the rule that the district court announced and that my friends on the other side are championing. It failed in the United States Senate. It died there. So Congress had an opportunity to write this rule into the United States Code. It considered it, and it failed. It didn't go through the bicameralism and presentment process. They are asking you to smuggle into the United States Code something that Congress expressly considered and rejected. So under cases like West Virginia, if you are going to take a look at legislative history, this case is over. So there's no statutory text or congressional authorization for this rule. It is a pure creature of common law. I don't think that because Palos is on the books that you should take that as a license to engage in common law rulemaking. Because if you did, we plaintiffs have some things that we would like to change about the jurisdictional statutes as well. Maybe you should index the amount in controversy to inflation and say that when Congress passed the $75,000 threshold, they meant dollars at that time. You're obviously not free to do that. That's legislating. That's for Congress. Congress has been quite active in this area. They've considered about a dozen different changes to the removal statute since 1948. So this is not an area where Congress has been silent. They've been looking at these sorts of questions. If they have a policy argument for why you should expand federal subject matter jurisdiction under 1332, they can take it up with the lawmakers who are charged with making policy in our constitutional republic. Let me quickly take on this notion that there's some mountain of precedent that compels the district court's rule. Respectfully, I think it's a little difficult to take that seriously. Let's remember, we're here on a 1292B appeal. That means there has to be open questions of law that are debatable. The district court certified this. We obviously argued that it was debatable and that you should take it. You took the appeal. They agreed with that. They didn't write to you and say, don't take this appeal. There's nothing to see here. The Supreme Court of the United States, with dozens of cases that are 100 years old, have already established this rule. By the way, the district court didn't cite any of those cases because that's not where the no real intent test originates from. But if Justice Holmes, in a stray sentence in 1913, was somehow controlling, they shouldn't have told you to take this case. But they obviously told you they had no problem with you taking this case under 1292B. So they've got orbiter dicta from 100-year-old opinions interpreting a different version of the removal statute. There is absolutely no basis to say that Supreme Court precedent controls here. So from first principles, you should reach the right jurisdictional result and say that there is no real intent test. That would provide the most clarity for district courts. It would be the most advantageous for litigants. And it would hew to Supreme Court precedent that actually does exist, telling you that wherever possible, jurisdictional rules should be bright lined and clear. So we avoid the inefficiency of these sorts of appeals. These cases have been on file for four years, two of which have been in federal court fighting about whether there's actually judicial power to reach the merits. So, counsel, let's talk. Wilson, we're talking about some old cases. But in Wilson, I mean, the Supreme Court did talk about whether the defendant had any purpose to prosecute the action in good faith. It mentioned the word purpose. But the clear holding of Wilson and that entire line of cases with it were fraudulent allegations of fact. The plaintiff knew that the allegations that the plaintiff was pleading were not true. I would challenge my friends on the other side to find a single appellate case ever from the Supreme Court or from the Court of Appeals that actually rested a holding of subject matter jurisdiction on the plaintiff's intent to proceed. I agree with you. There are stray quotes from different opinions, most notably the Abel's opinion from the Third Circuit, which is where all of the district court cases that the district court here cited originated from. But there are stray quotes, stray language from these cases that talk about intent. But no Court of Appeals has ever held that intent was the basis for establishing subject matter jurisdiction. And I would encourage you not to be the first. Now, let me give you the second independent ground that I think we prevail on. And that's the failure to prosecute standard that we argue as an alternative. It's not as satisfying to me as first principles, but it's a perfectly good result. If you are going to countenance an intent-based inquiry, I think you should be focused on the procedural rules that exist in the court where the plaintiff chose to file to determine whether that intent is real. And the reason that I think that that cues more closely to your precedent is if you look at Palos, it says fraudulent joinder is difficult to establish. There basically has to be not a snowball's chance in Hades that the plaintiff is going to prevail. You have to take all of the facts and the law in favor of the plaintiff and then say, could this case succeed? That's exactly the test that you would want to apply if you're embracing intent when you look at failure to prosecute. If under the state procedural rules of Pennsylvania, the Pennsylvania court wouldn't have dismissed the hospitals because there wasn't enough inactivity, then we still have a chance. It's still colorable. We could still prevail. That party wouldn't be tossed from the case based on our litigation activity. They might not say it's a very good chance. They might say, well, you're not working hard enough. We think you should have taken a longer deposition or served more discovery. But if under the state rules we're still alive, then we have a chance against that party. So it cues more closely to Palos if you're looking for an alternative ground. A third alternative ground that we bring up in our papers, admittedly, I think this is the least satisfying in terms of providing guidance to the lower courts, but it's quite easy and straightforward, is the 30-day time limit under 1446b3. The Supreme Court, maybe in a matter of minutes, is going to be hearing the Enbridge case from your colleagues in the Sixth Circuit, which discussed whether or not there's any leeway to adjust the 30-day rule based on equitable principles. I think the Sixth Circuit got it right, and there's not any leeway. We'll see if the Supreme Court agrees. But regardless, they've never argued for something like equitable tolling. It is black letter under 1446b3 that they didn't remove within 30 days of when the cases first became removable, when they could first ascertain that the cases were removable. All of the litigation conduct that they point to happened before, long before, they tried to remove these cases. I would actually commend to you footnote 4 of Palos, which addresses almost exactly this situation. You said in Palos footnote 4, had the plaintiff actually been aware of this issue and raised it to the district court, the district court should have remanded because the removals were untimely. But because 1446b3 is a claims processing rule, not a jurisdictional rule, it can be waived. And because Palos didn't catch it, we're going to hear the rest of this appeal. Well, we haven't waived anything. We've waived the timeliness of these removals, 1446b3, at every turn when they first removed, when we first moved to remand, and obviously here in this court. And so there's nothing that's been waived. I don't think there's any equitable flexibility. I would commend the Enbridge case from the Sixth Circuit as persuasive authority. They haven't argued for any. So they're out of court. Their response to that is something about an exception to the involuntary rule in 1446c. I'm talking about 1446b3, which says they have to remove within 30 days of when they can first ascertain that the case is removable. If we are talking about a situation where there's no real intent to proceed, the case becomes first removable, not when the trial court dismisses the claims against the hospital defendants, but when they can first ascertain that we didn't have the requisite intent to proceed. They say that that's when we took a short deposition, or when we didn't serve discovery on the hospitals, or we didn't file a motion to compel. All months before they actually removed this case. So if you look at the factors that they ought to be focused upon to determine the timeliness of removal, again, I think 1446b3 is crystal clear. I'm happy to pause here and answer any questions that your honors have. Otherwise, I'll save time for rebuttal. After the Pennsylvania court entered a dismissal against the Pennsylvania defendant, the hospital, there was no, the appeal of that, if you wanted to take an appeal, was deferred, am I correct, until the end of the entire litigation under Pennsylvania law? That is correct. We had a meet and confer phone call about trial selections with opposing counsel. They asked us, do you plan to appeal? My colleague was the one on the phone, and he said no. He interpreted that to mean, are you appealing right now? Are you going to seek an interlocutory appeal? Pennsylvania is just like federal court. You typically don't get an interlocutory appeal. So we weren't going to pursue one at that time. And in the interim, pending the final judgment in the Pennsylvania case, was that judgment of the Pennsylvania court subject to full faith and credit? It's an interesting question because it's still an interlocutory order. I would suggest the answer is no, because there is no final judgment even to this day. The cases were removed a day after that meet and confer phone call, so I still think it's an interlocutory order in Pennsylvania. It seems to me the statutory provision that has been underplayed by the parties in this appeal is 1738, which requires us to give the judgment of a state court the same recognition it would have in its own jurisdiction. I agree with you, but because it's an interlocutory order that has not yet merged into a final judgment, I don't think it would be considered race judicata. And we would still have our right to appeal after final judgment. I admit to you, I have not looked at Pennsylvania law to determine whether they treat trial court judgments that are still subject to appeal as race judicata. It's an open question in some states. I don't know about Pennsylvania. It seems to me as a district judge, federal district judge, you'd look at what Pennsylvania was doing over there, trying to figure out what the status of that party was in that state litigation. That would be a primary issue that you'd want to explore, and if it's not a final judgment under Pennsylvania law that would be recognized by other courts in Pennsylvania as such, it's kind of game over in terms of what the federal court can do. It just can't recognize that judgment. I don't think that it is a final judgment because it's interlocutory. Not all claims by all parties have been adjudicated, so there are still the claims against the manufacturers. We couldn't have appealed other than through special permission like the equivalent of a 1292B at that moment. So I don't think it's final, but I would also say even if it were treated as race judicata, they're not asking, and we're not asking you to reverse the trial court in Pennsylvania in adjudicating claims against the hospitals. They're simply saying pretend as if the hospitals were never parties in the case, and therefore that there was no diversity problem. Nice. I understand. Thank you. Thank you, Your Honors. Ms. Gorbely? Good morning, Your Honors, and may it please the Court. What I didn't hear just now was any denial that plaintiff acted in bad faith and that they filed these claims against the hospital solely to avoid removal and without any intent to pursue them in good faith. Twice they were ordered to file an amended complaint pleading more specifics. Twice they responded by pleading less. Meanwhile, they made no serious attempt to pursue discovery on the merits of the claims, and ultimately the trial judge ran out of patience. Counsel, I want to stop you there because I do see that there was an equivalent of a 30B6 and that the hospital was resistant, there was a motion to compel, and eventually it did happen. So I guess that's something, right? And there were policies. The one deposition I saw on the record of a neonatologist had policies attached to it, so I assumed there was some sort of document discovery with the hospital. The problem that I have is you're putting your test would be putting district judges as sort of evaluators of how much discovery is enough to show intent to litigate. That's a really tough spot for a district judge. And so I'm concerned about the practical administrability of this intent test, irrespective of whether it's even proper in the first instance. So, Your Honor, first of all, the idea of an intent test comes straight from Congress in 1446C1, and my opponent concedes in their opening brief at page 22 that the intent of the plaintiff to not pursue the claim is an appropriate consideration under 1446C1 under the bad test. There's no dispute about that. So if I could respond to my opponent's argument about first principles and statutory text. I want you to answer my practical question, because here you don't have a plaintiff doing nothing to prosecute a claim, right? I mean, can you acknowledge that at least? I can acknowledge that, Your Honor. I mean, even the district court acknowledged that. That was one of the concerns and probably one of the reasons, among many others, that she certified the order for interlocutory appeal. So I agree with that, Your Honor, but let's look at what happened just with respect to the pleading issue. The plea in the first amended complaint, there was an objection to it, and the judge said plead more facts, and the plaintiff pleaded less. There's no practical functional difference between filing a voluntary dismissal and simply refusing to do, voluntarily refusing to do what the trial judge is telling you to do to pursue the claim and sitting back and waiting for it to be dismissed. And this is where I think it's really important to understand that the rule we are talking about in this case isn't necessarily a rule about creating federal jurisdiction. Fraudulent joinder does two different kinds of work. It can do work at the outset of a case where it provides a basis for ignoring a party who is still in the case. That's not the work that it's doing in our case. In our case, the concept of fraudulent joinder or lack of intent to pursue or what have you is providing bad faith under 1446 C1 and an exception to the voluntary doctrine. And that's because on the day these claims were removed, there was federal jurisdiction. Now, my opponent is still ignoring, even today, the fact that two of his five clients who are before the court today were not Pennsylvania residents at the time these lawsuits were filed. So for those cases, jurisdiction existed the entire time. For the other three cases, the district court dismissed the claims with prejudice, so they were gone from the case under PULOS. They were gone from the case. My opponent's argument is it doesn't matter whether we intended to pursue the claims. In fact, it doesn't even matter whether they were live claims in the case. The claims don't even need to be pending as long as the name of the defendant is still in the caption and you could theoretically have an appeal at the end of the case. Even today, my opponent is not telling this court that the dismissal with prejudice was problematic, that it was erroneous, or that they intend to appeal it at the end of the case. All they have said is that they intend to consider their options at the end of this case, and this is why I'd like to come back to the statutes that my opponent is so focused on. The main theme of the appeal is that the court should resolve this case based on statutory text. I'm fine with that, and doing so requires affirmance. We had a statutory right to remove once the hospital claims were gone from the case, dismissed with prejudice. The only relevant statutory limit is the one-year bar in 1446c1, which doesn't apply if the district court, and I'm quoting, finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. That's exactly what the district court found here, and my opponent makes no serious argument that that was error, that it was, he makes an argument in the reply brief that it was waived, but that's demonstratively false, and I would refer the court to page 14 of our response brief where we quote the supplemental appendix and the section of our does not apply. It is the plaintiffs here who need to invoke an atextual rule, the voluntary involuntary doctrine. That's the only thing they have, is the voluntary involuntary doctrine. That rule itself is a judge-created rule, and it has exceptions, exceptions that this court has recognized in Poulos. So whether this court decides that the dismissal was functionally involuntary because it came about as a result of the plaintiff's continued refusal to acknowledge the district court's direction about how to plead a claim, and then they were perfectly content to go to judgment without that claim in the case. They didn't say it was an erroneous dismissal. They've never said that. They didn't say, they didn't try to seek an appeal at the time. All they've said is there's theoretically an appeal at the end of the case. So I understand that that presents a practical problem, but that's exactly why the courts have created the voluntary involuntary doctrine. And the principle I'm asking this court to consider is that a district court has to have the ability to look at a set of facts and say these plaintiffs who never intended to pursue this claim to a joint judgment, these plaintiffs who did not pursue this claim in good court, and invoke the judge-made voluntary involuntary doctrine to frustrate the defendant's statutorily guaranteed right to remove a diverse case. What's your precise test though? Because how are we going to instruct district courts so that there isn't this yo-yo effect? I mean this is the third time you tried to remove a lot of the facts that you're relying on. You're focusing now, and I think I actually understand why. You're focusing on the dismissal. I get that. But a lot of the facts, even that the district court relied on, they were there. They were there well before the dismissal. So how do we craft a rule that doesn't then result in just yo-yoing back and forth between federal and state court based on, you know, how zealous a plaintiff is prosecuting the case? So this is our second removal in these cases. The first one was within 30 days of the filing of the complaints, and we said there's no possible way these claims can proceed, and the district court disagreed with us. And then as time went on, the plaintiffs totally failed to pursue or amend, even plead their claims in a way that the trial court later called insulting to the court, and she didn't like being used. So that's the conduct we're dealing with. These cases will always be, the inquiry will always be case by case, in fact, dependent, and I think we need to trust our district courts to be able to look at these issues and decide. And the plaintiffs don't contest it here. This is, I think, an easy case. Even today, the plaintiffs do not contest and have not contested in their briefs that they truly intended to seek a joint judgment, and the reason for that is actually that the claims against the manufacturers and the claims against the hospitals are fundamentally inconsistent. That's why, in the one case, the only case in which plaintiffs have taken a hospital claim to the jury, they have said, blame the hospitals, we don't care about the, or blame the manufacturers, we don't care about the hospitals, because at the end of the day, the theory against the manufacturers is that the manufacturers failed to warn the hospitals about the risk of necrotizing enterocolitis, and to recover against the hospitals, they have to show that the hospitals already knew about the risk and violated the standard of care. And if I can note, plaintiffs have sued every single hospital in the Philadelphia area that does labor and delivery. It can't be the case that every single hospital violated the standard of care. Their theory is that hospitals violated the standard of care because they allowed formula to be given to infants who are premature. Every hospital does that. So how could it violate the standard of care? This is why we are so confident, and plaintiffs do not dispute, that they never intended to pursue a joint judgment, and a plaintiff cannot use a claim they never intended to pursue because, to avoid federal jurisdiction, because there is no chance of recovery on that claim. Like by definition, there's no reasonable possibility of success on a claim that the plaintiff never intended to pursue. So on the administrability point, I think this is an easy case. This particular case is an easy case because the plaintiff doesn't even dispute that they acted in bad faith under 1446c1. The question really before the court is, what is the shape of the voluntary-involuntary doctrine? And we think the court can resolve that question either of two ways. The court could conclude that a dismissal like this one is functionally voluntary, because it can't be the case that there's no functional difference between filing a paper that says voluntary dismissal and simply sitting back and waiting for your inaction to create and cause a dismissal. Another way the court could resolve this issue is to recognize that at least in the context of the voluntary-involuntary doctrine, a lack of intent to pursue a claim in good faith precludes the plaintiff from invoking the protection of that judge-made rule to avoid what was plainly a dismissal with prejudice that removed the non-diverse defendants from the case, and for the two who were always completely diverse, removed the form defendant. So I think that's really the issue. What you're doing here is recognizing fraudulent joinder in the context of the back end. After jurisdiction already exists, what is the threshold for fraudulent joinder to prevent a plaintiff from invoking the judge-made voluntary-involuntary rule? And at a minimum, a lack of intent to pursue demonstrated by a total failure to plead a claim that the state court could recognize should be enough to create or apply that exception. When it comes to, excuse me, my friends mentioned this statute about fraudulent joinders, suggesting that there's clear legislative history that Congress intended to reject a lack of intent to pursue concept for fraudulent joinder. That's not true. The House Republicans propose and pass this bill as a way to, quote, codify existing law. That's what the legislative history tells us. It was the House Democrats who complained, no, it would change the law, but their point of view did not carry the day. They opposed the statute on that basis. And of course, the issue was never taken up by the Senate, and so the legislative history is not something we can draw any conclusion from. My opponent mentioned the 30-day rule, and I'd like to address that. We removed this case within 30 days of filing because on its face we thought there was no possible way of success. The district court disagreed with us, and so we went back to state court because that's not appealable, of course. The reason we removed the second time is because the non-diverse defendants were removed from the case, and we removed within 30 days of that event. That was the basis for our removal from the beginning. So we're not using fraudulent joinder to create federal jurisdiction here. We're using fraudulent joinder as one of several ways to avoid the voluntary-involuntary doctrine that plaintiffs are trying to invoke and to establish bad faith for which intent should matter whether or not you call it fraudulent joinder. The standard in 1446C1 is not fraudulent joinder. It's bad faith, which obviously takes into account intention. And I also just want to mention one other thing, which is, again, with respect to the demonstrated bad faith here, I have to point out that the only time that my opponents have sued hospitals are when it's necessary to avoid removal, and that includes in the hundreds of cases they have filed in Illinois on behalf of infants who were treated in Illinois hospitals, and the hospitals could have been sued in those cases as a matter of jurisdiction, and the plaintiffs have not sued them. Why? Because they have no intent to pursue these claims. This is not a close question in this case, Your Honors, and it's not even seriously disputed. So while I understand the need to create a clear rule, at a minimum the Court should find that facts like the ones here where the claim was never pleaded in good faith and the District Court dismissed it on that basis should meet the standard for bad faith and should support removal. Thank you very much. We'll round you up to two minutes. Thank you very much, Your Honor. Let's see if I can make four quick points. First, I heard multiple times that we don't contest bad faith. I'm not sure where that's coming from. Page 38 to 39 of our opening brief, page 15 to 18 of our reply, we absolutely dispute that. It is true that we want to be in state court, and we have an absolute right to try and be in state court, just like they have a right to try and get into federal court because they think that's better for their client. That's your precedent in Darby. We only sued the hospitals where we need to to be in state court, because I'll just say completely candidly to the Court, we've made a tactical judgment call that the extra expense and burden of suing the hospitals to keep our chosen forum is worth it. That's in the best interest of our clients. I won't apologize for that, and that doesn't show bad faith at all. It's good lawyering on my part. Let's talk about 1446b2. I agree with my friend. We made a mistake in our jurisdictional statement originally. I apologize to the Court. There are two plaintiffs who are not from Pennsylvania. They're from New Jersey, but 1446b2, the local defendant rule, is statutory tax that tells you you still can't remove under those circumstances, and for three plaintiffs, there is diversity problems for them, which leads to the voluntary-involuntary rule. They have no response to our argument that the voluntary-involuntary rule is not judge-made. It is completely consistent with statutory tax because adjudicating claims on the merits does not dismiss a party. We talk about dismissal of claims because Rule 12b6 speaks in that language, but we're not talking about actual tossing out of claims or parties. We're talking about an adjudication. It just happens early in the case. If a jury returned a verdict for the hospitals, they're not out of the case and no longer parties when we file post-trial motions saying we want a new trial because the evidence supported us. So I don't think that that is an accurate thing for them to be latching onto, and they had no response to our arguments from first principles. The final point I'll make about us having a choice about seeking an appeal, why do we have to decide up front today before we've seen a final judgment and commit to them whether we're going to appeal? We have a perfect right to evaluate our options after the case is final and over. Thank you, Your Honors. Thank you to all counsel. We will take the case under advisement.